UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| OMAR A. RAHMAN, | § | CIVIL ACTION NO. 3:18-cv-00894 |
| Plaintiff | § | |
| | § | JUDGE BRIAN A. JACKSON |
| v. | § | |
| | § | MAGISTRATE JUDGE |
| EXXON MOBIL CORPORATION, | § | RICHARD L. BOURGEOIS |
| Defendant | § | |

**EXXON MOBIL CORPORATION'S MEMORANDUM IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER AND MOTION TO
QUASH RULE 30(b)(6) DEPOSITION NOTICE**

Exxon Mobil Corporation ("ExxonMobil") submits this memorandum in support of its

Motion for Protective Order and Motion to Quash Rule 30(b)(6) Deposition Notice ("Motion").

**I.      Factual and Procedural Background**

**A.      Relevant Facts**

ExxonMobil operates a refinery and chemical, plastics, polyolefins, and lubricants plants

in East or West Baton Rouge Parish, Louisiana.[1]  In general, these sites have separate

administrative and operational structures and are not operationally or administratively integrated.

ExxonMobil's Baton Rouge Polyolefins Plant ("BRPO") is a freestanding facility with its own

Site, Operations, Maintenance, and HR Managers.[2]  The Site Manager does not report to any

manager or supervisor at the refinery or chemical, plastics, or lubricants plants.  Rather, the Site

Manager reports to a corporate officer within ExxonMobil's global Chemicals Division.

---

[1] *See e.g.,* Exhibit D, Excerpts of Blount Deposition, 43:13-45:25.
[2] *Id.* at 8:17-8:19, 10:18-10:25, 11:11-11:22, 43:13-45:25.

The plaintiff in this case is Omar Rahman ("Rahman" or "Plaintiff").[3]  His race is African American.  The basis of his suit against ExxonMobil is alleged race discrimination.[4]

On or about February 13, 2017, Rahman and nine other new hire probationary employees were hired into BRPO's 2017 operations class.[5]  From February-April 2017, the class (including Rahman) underwent basic operator training ("BOT").[6]  Rahman does not contend that he was subject to any race discrimination during BOT.[7]

At the completion of BOT, the class members were assigned to field training in one of BRPO's operating areas.[8]  All BRPO new hire operators are each required to complete field training in a specific area of BRPO to which they are assigned and to pass a final walkthrough to qualify on their assigned posts.[9]  Four class members were assigned to the Polyethylene ("PF") Area, and three class members were assigned to the Densification ("DN") Area.  Rahman and one other class member were assigned to the Polypropylene ("PP") Area.[10]  BRPO's Operations Manager is responsible for the PF, DN, and PP Areas.  Immediately below him are two Second Line Supervisors, one of whom is responsible for the PF Area and one of whom is responsible for the DN and PP Areas.

Rahman's field training in the PP Area lasted from April-July 2017.  At the end of his field training, Rahman failed to adequately demonstrate the knowledge and understanding of the unit equipment, processes, and tasks necessary to pass his final walkthrough despite receiving two opportunities to do so.[11]  Therefore, Rahman was unable to qualify in the PP Area, and his

---

[3] Complaint [Doc. 1].
[4] *Id.*
[5] *See* Exhibit C, Excerpts from Plaintiff's Deposition, 103:21-104:8.
[6] *See e.g.*, Complaint [Doc. 1], ¶ 7.
[7] *See* Exhibit C, Excerpts from Plaintiff's Deposition, 130:9-130:18.
[8] Exhibit E, Excerpts from DiRosato Deposition, 36:17-37:13.
[9] *Id.* at 46:23-47:22.
[10] *Id.* at 35:11-35:18.
[11] *See e.g.,* Exhibit E, Excerpts from DiRosato Deposition, 74:2-75.

employment was terminated.[12]    The decision to terminate Rahman's employment was recommended by the Second Line Supervisor for the DN and PP Areas; made by the Operations Manager; and endorsed by the Site Manager.[13]

   **B.    Relevant Procedure**

   Rahman was deposed on July 3, 2019.  He freely admitted that he was not qualified to independently operate the PP Area at the time of his final walkthroughs.[14]  Instead, Rahman alleged that he did not qualify because of alleged inadequate field training received.  Rahman did not make any allegations of racial slurs or other racially inappropriate treatment and admitted that during his employment at BRPO, he never complained of race discrimination.[15]  In essence, the only alleged basis of Rahman's race discrimination claim is that he believes the alleged improper field training he received was allegedly unlawfully based on his race.

   Against what should be a relatively simple race discrimination case (*i.e.*, single decision and narrow time period at issue), Rahman attempted to obtain discovery on matters well beyond what is relevant or proportional to this case through the written discovery process.  Rahman's requests included:[16]

   1.    All documentation of the current BRPO race composition;

   2.    The name, address, telephone number, gender, race, date of birth, and employment dates and history at and on file with ExxonMobil for all employees assigned to work in and/or manage/supervise the BRPO PP Area since 1990;

   3.    The name, address, telephone number, gender, race, date of birth, and employment dates and history at

---

[12] *Id.*
[13] *See e.g.,* Exhibit E, Excerpts from DiRosato Deposition, 78:5-79:23.
[14] *See e.g.,* Exhibit C, Excerpts from Plaintiff's Deposition, pg. 249-250:11.
[15] *Id.* at 152:16-153:9.
[16] Exhibit A, Plaintiff's Notice.

and on file with ExxonMobil for all individuals who applied to work in the BRPO PP Area since 1990;

4. Performance reviews/evaluations for every individual applying for a position in the BRPO PP Area since 1990;

5. Demographic, performance, and employment information regarding all 2017 operations new hire class members;

6. All race discrimination lawsuits filed against ExxonMobil for all Baton Rouge facilities since 2010;

7. All race discrimination EEOC or LCHR charges filed against ExxonMobil for all Baton Rouge facilities since 2010;

8. All documents related to BRPO race discrimination complaints/investigations since 1990;

9. All compliance documents submitted by BRPO to the EEOC for the past ten years; and

10. BRPO's Affirmative Action Plans ("AAP") for an undefined period of time.[17]

In response, ExxonMobil's responses included:

1. A list of all current BRPO employees identified by race, position, and department (with names redacted);

2. Copies of all documents of which BRPO is aware that relate to Rahman's application, hire, training, performance, pay, benefits, and termination at/from ExxonMobil;

3. The names of all employees assigned to work in management and/or operations of the PP Area in 2017;

---

[17] *See,* Exhibit A to Plaintiff's Motion to Compel [Doc. 15-3], Omar A. Rahman's First Set of Request for Production of Documents to Defendant ExxonMobil Corporation and Omar A. Rahman's First Set of Interrogatories to Defendant ExxonMobil Corporation.

4.      The names of all employees assigned to train on and qualified in the PP Area between 2012 and 2017;

5.      The names, current employment statuses, termination reasons (if applicable), last known addresses (if terminated), races, names of assigned initial training areas, and names of assigned initial trainers of all 2017 operations new hire class members;

6.      The BOT test scores for all BRPO 2017 operations new hire class members;

7.      The area qualification cards (*i.e.*, PF, DN, or PP) for all 2017 operations new hire class members;

8.      Copies of some 688 pages of field training materials for the BRPO PP Area;[18]

9.      A statement that no race discrimination lawsuit had been filed regarding BRPO since January 1, 2010;

10.     A copy of BRPO's submitted EEO-1 Reports from 2015-2017; and

11.     Copies of relevant BRPO and corporate policies and procedures.[19]

In all, ExxonMobil has produced some 1,199 pages of documents to Rahman.  Still, for a majority of Rahman's sprawling requests, ExxonMobil has strenuously objected.  Rahman filed a Motion to Compel, which is currently pending before the Court and to which ExxonMobil intends to timely oppose.[20]

Rahman has also taken and/or scheduled eight fact depositions.  On July 25, 2019, he deposed the BRPO HR Manager who supported management on the termination decision and the

---

[18] In addition, Rahman produced some 3,502 pages of BOT materials that he improperly kept after his termination from ExxonMobil.
[19] *See*, Exhibit B to Plaintiff's Motion to Compel [Doc. 15-4], Exxon Mobil Corporation's Objections and Responses to Omar A. Rahman's First Set of Request for Production of Documents, Exxon Mobil Corporation's Objections and Responses to Omar A. Rahman's First Set of Interrogatories, and Exxon Mobil Corporation's Supplemental Responses to Omar A. Rahman's First Set of Interrogatories.
[20] Rec. Doc. 20.

BRPO Second Line Supervisor who recommended the termination decision.  On August 6, 2019, he deposed the BRPO Site Manager who endorsed the termination decision and the PP and DN Area Trainer and Superintendent, both of whom provided information to the decision maker. Rahman is scheduled to depose on August 20, 2019 the PP and DN Area Day and Shift Supervisors, both of whom provided information to the decision maker and the other 2017 new hire class member who trained in and qualified on the PP Area.[21]  During the depositions taken to date, Rahman has asked the witnesses questions regarding the past and current racial composition of the BRPO and BRPO PP Area, race and other demographic or employment information regarding PP Area employees, race and other demographic or employment information regarding all 2017 operations new hire class members, information regarding race discrimination complaints made at BRPO, information regarding BRPO's racial demographic statistics and efforts to recruit minorities, and information regarding the races of individuals identified by ExxonMobil in discovery.

Despite the unusual amount of discovery to date, Rahman still believes he needs and/or is entitled to more.  Accordingly, on July 26, 2019, Rahman served ExxonMobil with a Notice of FRCP 30(b)(6) Deposition ("Notice").[22]  The Notice seeks to require ExxonMobil to designate a witness for Rahman to depose on eleven overbroad topics, which include contention topics that seek to require ExxonMobil to marshal all of its evidence for the case; topics that are duplicative with discovery already done; and information regarding all of ExxonMobil's Baton Rouge operations (not just the BRPO), including policies and procedures, AAPs since 2010, the current racial composition and breakdowns for units and sub-units, and information regarding

---

[21] Rahman was also scheduled to depose the operator assigned to train him during his field training on August 20. Unfortunately, that operator passed away on July 30, 2019.
[22] Rahman provided ExxonMobil with a draft FRCP 30(b)(6) Notice on July 3, 2019.

complaints, investigations, EEOC and LCHR charges, and lawsuits since 2010.[23]   Also, the

Notice seeks to require ExxonMobil to produce even more documents in eleven overbroad topics

that include "discovery on discovery" type requests; contention requests; requests that are

duplicative with discovery requests already made and objected to; all documents evidencing the

racial composition data for BRPO new hires and PP Area new trainees; and personnel

information regarding non-parties.   Making the request even more burdensome is that Rahman

also states that the document requests are also separate corporate deposition topics.

On August 7, 2019, ExxonMobil submitted written objections to the Notice.[24]   On August

14, 2019, ExxonMobil notified Rahman that no witness would be designated for the August 20

30(b)(6) deposition and that a protective order would be filed to preserve such action.[25]   This

protective order is filed for the purpose of doing just that.   Enough is enough.   ExxonMobil seeks

protection from further annoyance, embarrassment, oppression, or undue burden in what should

be a simple, straight forward case.

## II.   **Law and Argument**

**A.   General Standard for Granting Protective Order.**   Pursuant to Rule 26(c) of the

Federal Rules of Civil Procedure, the Court "may, for good cause issue an order to protect a

party or person from annoyance, embarrassment, oppression, or undue burden or expense."   Fed.

R. Civ. P. 26(c)(1).   A court, pursuant to Rule 26(c), may issue an order "forbidding the

disclosure or discovery;" "forbidding inquiry into certain matters, or limiting the scope of

disclosure to certain matters;" and other relief.   Fed. R. Civ. P. 26(c)(1)(A)(D).

Furthermore, instructing that a Court "must limit" discovery in certain situations, another

section of Rule 26(b) provides:

---

[23] Exhibit A, Plaintiff's Notice.
[24] Exhibit B, ExxonMobil's written objections to Plaintiff's Notice of FRCP 30(b)(6) Deposition.
[25] Exhibit F, August 14, 2019 Emails.

> (C) *When Required.* On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26 (b)(2)(C).  The importance of the limitations of Rule 26(b)(C)(2)(i)-(iii) is emphasized by its mandatory language of the instruction, and the provision that such limitations are available with or without a party's motion.

As defined by Rule 26(b)(1), the scope of permissible discovery in proceedings in federal courts is limited by **relevance** and by **proportionality**.  Rule 26(b)(1) provides, "[p]arties may obtain discovery regarding any nonprivileged matter that is **relevant** to any party's claim or defense and **proportional** to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  (Emphasis added.)

Consequently, a court is empowered by Rule 26 to limit discovery that is not relevant or is out of proportion with the needs of the case.  Rule 26(c) signals that "discovery does have 'ultimate and necessary boundaries.'"  *Wilkerson v. Stadler*, 2015 WL 2236417, *2 (M.D. La.)(citations omitted); *see also In re Katrina Canal Breaches Consolidated Litigation*, 2008 WL 927946, *3 (E.D. La.)("[The Federal Rules] require that the court strike a balance between the

fairly broad scope of permissible discovery . . . and the benefit that the requesting party may obtain from the materials, on the one hand, with the need to protect producing parties from undue burdens and privacy concerns on the other side of the balance."); *BG Real Estate Services v. American Equity Ins. Co.*, 2005 WL 1309048, *3 (E.D. La.)("Rule 26(b) is not a discovery blank check. It requires balancing and imposes on the court the obligation to rein in overly broad, potentially abusive discovery.").

The 2015 amendments to Rule 26, moreover, further "reinforce[] the Rule 26(g) obligation of the parties to consider [the proportionality] factors in making discovery requests, response, or objections." Fed. R. Civ. P. 26–Advisory Committee Notes 2015 Amendment. While "[r]estoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality," it does refocus and reinforce the "collective responsibility" shared by the parties and the Court "to consider the proportionality of all discovery." *Id.*

B. **Rule 30(b)(6) Imposes Additional Discovery Limits Enforceable by Protective Order.** Rule 30(b)(6) governs deposition notices directed to organizations. In addition to the discovery limitations described by Rule 26(b)(1), Rule 30(b)(6) imposes additional restrictions and requirements for discovery sought by corporate deposition. In the corporate deposition notice, the party seeking discovery "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). In response, the organization must designate an agent or other person to testify on its behalf "about information known or reasonably available to the organization." *Id*. The court may limit a Rule 30(b)(6) deposition notice to the extent it requests the organization to designate an agent to testify on topics of information that are irrelevant, vague, ambiguous, or overly broad, or which otherwise fail the particularity request. *See*, *e.g.*,

*Krantz v. State Farm Fire & Cas. Co.,* 2016 WL 320148 (M.D. La.)(MJ Bourgeois)(imposing limitations where all Rule 30(b)(6) deposition topics in notice from plaintiff-homeowner to insurance company were "generally overbroad and striking and/or narrowing several topics which were "vague, overly broad" or "irrelevant" to plaintiff's particular claims); *Scioneaux v. Elevating Boats, LLC*, 2010 WL 4366417, *3 (E.D. La.)(quashing deposition notice where the plaintiff failed to particularize the topics of discussion in Rule 30(b)(6) deposition notice); *In re Katrina Canal Breaches Consolidates Litigation*, 2008 WL 4833023 (E.D. La.)(granting motion for protective order to the extent topics listed in a 30(b)(6) notice were overly broad, vague and ambiguous); *Padana Assicurazioni–Societa Azioni v. M/V Caribbean Exp.*, 1999 WL 30966 (E.D. La.)(denying motion to compel Rule 30(b)(6) deposition where the notice was insufficiently particularized).

A party facing an objectionable notice to produce a corporate representative for a Rule 30(b)(6) deposition may be excused from producing a witness prepared to testify as to topics for which there is a motion for a protective order pending. *See* Fed. R. Civ. P. 37(d)(2). In this case, a protective order is needed to protect ExxonMobil from Rahman's onerous, irrelevant, overly broad, duplicative, and/or impermissible Rule 30(b)(6) deposition topics and document/testimony demands.

**C.** **<u>Location Should Be Principal Place of Business.</u>** The deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business, especially when the corporation is a defendant. *Hennings v. CDI Corp.*, 2009 WL 10678978, *2 (M.D. La.), citing Turner v. Kansas City Southern Ry. Co., Inc.*, 2008 WL 4444282, *1 (E.D. La.) and *Salter v. Upjohn*, 593 F.2d 649 (5th Cir. 1979). The presumption that a corporation's principal place of business is the default location for its deposition is based on the concept that it is the

plaintiff who brings the lawsuit and who exercises the first choice as to forum.  *Id.*  This presumption satisfies the Rule 26(c) requirement of good cause for a protective order.  *Id.*  Thus, for this reason alone, ExxonMobil's motion for protective order should be granted and this deposition should be quashed.

      **D.**  **Some Topic Areas Are Not Relevant and/or Are Out of Proportion with Any Legitimate Fact-Finding Interest.**  Plaintiff's Deposition Topics (1), (3), (6), (7), (8), and (9) and Document Requests (5), (6), and (7) are objectionable, as they are not relevant to the claims and defenses at issue in this lawsuit and/or are out of proportion with any legitimate fact-finding interest in this lawsuit.[26]  Rahman's discovery tactics in this case have far exceeded what is a permissible or reasonable scope of discovery to this case.  In what is a simple disparate treatment case involving a single plaintiff and a single employment decision (*i.e.*, Rahman's termination less than six months after his hire based on his failure to qualify on his assigned BRPO PP Area post), Rahman seeks expansive discovery into ExxonMobil's workforce race statistics, affirmative action plans, diversity goals, hiring data, promotion data, ExxonMobil's facilities beyond the BRPO, and other information or data on matters with no relevance or proportionality to Rahman's particular discrimination claim.  Courts have refused to allow a plaintiff to seek discovery well beyond the scope of the plaintiff's particular claim at issue.  *See, e.g., Alvarado v. State Farm Lloyds*, 2015 WL 12941979, *4 (S.D. Tex.)(noting that plaintiff's individual claim of breach of contract against State Farm did not involve a class action or a pattern-or-practice, the court quashed plaintiff's Rule 30(b)(6) deposition notice with subpoena *duces tecum* to defendant State Farm  as "outside the scope of the claims involved in this case, fishing for

---

[26] *See*, Exhibit B to ExxonMobil's Motion which includes the detailed objections to each individual topic/document request.

privileged or trade secret materials, cumulative, unrelated to the elements of any of the causes of action at issue.").

Courts also have denied discovery of statistics and affirmative action plans as not relevant or proportional to the needs of a disparate treatment case. *See, e.g.*, *E.E.O.C. v. JP Morgan Chase Bank, N.A.,* 2010 WL 3910238 (W.D. Wis.)(in case involving individual denied promotion claims of race discrimination, court denied plaintiff's effort to compel workforce statistics where plaintiff had been provided specific discovery regarding the allegedly biased decision maker and decisions; also, in denying plaintiff's effort to compel defendant's affirmative action plans and diversity hiring goals, the court noted "this is a disparate treatment case involving a single employment decision, not a pattern and practice case"). *See also*, *Gillyen v. City of Tupelo, Mississippi*, 2017 WL 3283863 (N.D. Miss.)(denying disparate treatment plaintiff's motion to compel defendant to produce information regarding applicants hired and not hired in order to compare race and qualifications on theory that the defendant police department discriminated against African Americans as a class).

Also, courts will weigh a party's productions in considering whether additional discovery is proportional to the discovery needs for a case. *See, e.g, Miller v. Praxair, Inc.,* 2007 WL 1424316 (D. Conn.)(in case for alleged race discrimination, retaliation, and constructive discharge brought by former in-house counsel who resigned after 12 years of employment, court ordered production of EEO-1 reports for a four year period and certain "band level" race data, but refused to compel production of the defendant's affirmative action plans which were at most only tangentially relevant, would be burdensome to produce, and which would be "unreasonably duplicative" to information available from the EEO-1 and information to be produced.).  Here,

ExxonMobil has previously produced the BRPO workforce racial data and EEO-1 reports requested in plaintiff's written discovery.[27]

Rahman apparently justifies such broad discovery by his decision to hire a statistical expert in this case. However, Rahman's hiring of a statistical expert should not be allowed to convert and expand his single disparate treatment claim into what it is not. Rahman has no pattern-or-practice, class action, or disparate impact claim before this Court.[28]   The massive discovery battle that this case has become remains unjustified. Again, this is a simple, straight forward performance-based disparate treatment case. First by irrelevant and burdensome written discovery requests (to which ExxonMobil properly objected), and now by an onerous and overreaching corporate deposition notice, Rahman has overstepped limitations of the scope of allowable discovery pursuant to Rule 26(b)(1). Plaintiff's Deposition Topics (3), (7), (8), and (9) and Document Requests (5), (6), and (7) are not relevant to the claims or defenses at issue in this lawsuit and/or are out of proportion with any legitimate fact-finding interest in this lawsuit. Pursuant to Rules 26(b)(2)(C) and 30(b)(6), ExxonMobil is entitled to a protective order.

**E.    Some Topic Areas Are Impermissibly Vague, Overly Broad, and/or Lacking in Required Reasonable Particularity.**   Under Federal Rule of Civil Procedure 30(b)(6), a party must state with "reasonable particularity" the matters that will be explored during the

---

[27] The EEO-1s are for a three year period, 2015-2017, which encompasses two years prior to Rahman's hire and the year in which he was hired and terminated.

[28] Rahman's claim is restricted not only by the scope of his pre-lawsuit administrative charge (a defense ExxonMobil preserved as "Fifteenth Defense" in its Answer (Rec. Doc. 4)), but also by his lawsuit Complaint, as in neither does he raise a pattern-and-practice or disparate impact claim. Indeed, any attempt here to raise a pattern-and-practice claim must fail as the Fifth Circuit has held the pattern-and-practice method of proof is inapplicable in an individual's disparate treatment claim. *See, e.g.*, *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 355-56(5th Cir. 2001) ("pattern and practice" claims are unavailable outside of a class action); *Roy v. U.S. Dep't of Agri.*, 115 F.App'x 198, 201 (5th Cir. 2004)(same, citing *Celestine, supra*).

deposition.[29]    Rahman's deposition topics and document requests are not reasonably particularized and therefore, this Court should provide ExxonMobil with a protective order related to the Notice.  Further, Plaintiff's failure to provide topics stated with reasonable particularity prejudices ExxonMobil in attempting to meet its obligation to prepare a corporate representative.

Deposition topics seeking corporate testimony on "all" documents, all of a party's discovery responses, or the terms "refer or relate to" have been held to be overly broad and failing the reasonable particularity requirements.  *See, e.g., Trustees of Bos. Univ. v. Everlight Elecs. Co.*, 2014 WL 5786492, *3 (D. Mass.)(corporate deposition topics using phrase "including but not limited to," or seeking information "related to" a particular topic held as vague, overly broad, and failing to reasonably apprise deponent as to what information may or may not be responsive); *TV Interactive Data Corp. v. Sony Corp.*, 2012 WL 1413368, *1 (N.D. Cal.)("The Court agrees that Topic Number 52 is too vague since it seeks the production of a corporate witness regarding **all** facts and contentions for **each** of Funai's affirmative defenses and counterclaims"); *St. Tammany Par. Hosp. Serv. Dist. No.1 v. Travelers Prop. Cas. Co. of Am.*, 2008 WL 11355015, *1 (E.D. La.)(finding corporate deposition topic for corporate testimony on all of opposing party's responses to discovery requests, document productions, and searches for documents to be overly broad and without reasonable relationship to particular alleged deficient responses).

"Although Rule 30(b)(6) requires a designated witness to thoroughly educate him or herself on the noticed topic, there must be a limit to the specificity of the information the deponent can reasonably be expected to provide."  *United States ex rel Fago v. M&T Mort.*

---

[29] *See, e.g., Waste Mgmt. of Louisiana, LLC v. River Birch*, No. CV 11-2405, 2017 WL 2831700, at *3 (E.D. La. June 30, 2017)(deposition topic was overly broad and not reasonably particularized by simply referring generally to a RICO statement and party's Third Amended Complaint without any distinction as to specific allegations).

*Corp.*, 235 F.R.D. 11, 25 (D.D.C. 2006)(refusing to compel presentation of corporate designee to testify on topic requiring highly detailed testimony of sixty-three loans identified in previous productions).  Specifically, a party is only obliged to prepare a Rule 30(b)(6) witness "to the extent matters are reasonably available, whether from documents, past employees, or other sources."  *Todd v Precision Boilers, Inc.*, 2008 WL 4722338, *3 (M.D. La.), *quoting Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006); *Smithkline Beecham Corp. v. Apotex Corp.*, 2000 WL 116082, *9 (N.D. Ill.)("[T]he recipient of a Rule 30(b)(6) request is not required to have its counsel muster all of its factual evidence to prepare a witness to be able to testify regarding a defense of claim.").

In recognizing this important limitation, courts throughout the country have narrowed Rule 30(b)(6) notices that request testimony that is unreasonable as to its breadth and depth.  *See*, *e.g.*, *Burnett v. Ford Motor Co.*, 2015 WL 4137847 (S.D.W.Va.)(limiting a Rule 30(b)(6) topic area and noting "the corporate designee need not be prepared to discuss every minute detail of the individual investigations"); *Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 7, 18 (D.D.C. 2004)(disregarding all topics in Rule 30(b)(6) notice as "absurdly overbroad" and ordering the parties to compile an agreeable set of topics and submit them for judicial approval prior to the deposition).

Further, in employment discrimination cases, it is generally recognized that other claims of discrimination against an employer are only potentially relevant to a discrimination claim if limited to (a) the same form of discrimination, (b) the same department or agency where plaintiff worked, and (c) a reasonable time before and after the discrimination occurred.  *See*, *e.g.*, *Scott v. E.I. DuPont de Nemours & Co.*, 2015 WL 5472930, *1 (M.D. La.), *citing Willis v. U.S.*, 2012 WL 5472032, *1, n. 6 (M.D. La.); *Minnis v. Board of Sup'rs of Louisiana State University*

*Agricultural and Mechanical College*, 2013 WL 6271940 (M.D. La.). The Middle District in *Scott* found that the plaintiff's requests were overbroad when the requests were not limited to the treatment of similarly situated employees. *Id.* at *2. Further, the court found that timeframes were overboard when the time frame is substantially longer than when the plaintiff was employed. *Id.* Specifically, Mr. Scott was not employed as an operator until 2008, but the interrogatory requested information from 2002 forward. *Id.* Further, the Middle District did not require the defendant to supplement its response when the defendant had provided deposition testimony of the relevant information. *Id.* In this case, any of Rahman's requests seeking information or documents related to any facility outside of the BRPO, and outside of the PP Area, are impermissibly overbroad.

Consistent with these authorities, each and all of Rahman's deposition topics (1-11) and the additional document production and deposition topics (1-10) are out of step with the intentions of Rule 30(b)(6) and impose burdens on ExxonMobil never sanctioned by the Rule.[30] ExxonMobil should be granted protective order relief.

**F.** <u>**Unreasonably Cumulative and Duplicative Topic Areas are Better Obtained**</u> <u>**Through More Convenient, Less Burdensome, and Less Expensive Means**</u>. Plaintiff's Deposition Topics (1)-(4), (6)-(9), and (11) and Document Requests (5)-(7) and (9)-(11) are objectionable, as they are unreasonably cumulative, duplicative, and/or seek information that is better obtained (and in some instances has already been obtained) through more convenient, less burdensome, and/or less expensive means.[31] As expressly stated in Rule 26 (b)(2)(C), this Court "must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule

---

[30] *See,* Exhibit B to ExxonMobil's Motion which includes the detailed objections to each individual topic/document request.

[31] *See*, Exhibit B to ExxonMobil's Motion which includes the detailed objections to each individual topic/document request.

if it determines that: (i)  the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . .”  Fed. R. Civ. P. 26 (b)(2)(C).[32]  As set forth in more detail in Exhibit B to ExxonMobil's Motion (*i.e.*, ExxonMobil's objections to Plaintiff's Notice), the topics/document requests identified above are unreasonably cumulative, duplicative, and/or seek information that is better and/or has already been obtained through more convenient means.  Rahman has already requested documents sought in his Notice; ExxonMobil has already produced many documents in discovery that are responsive.  Rahman noticed eight fact depositions and has already deposed five fact witnesses.  In addition to covering the relevant facts, Rahman has had an opportunity to ask questions regarding past and current racial composition and demographics of the BRPO and BRPO PP Area, employment and training information regarding PP Area employees and 2017 operations new hire class members, and BRPO race discrimination complaints.  Thus, ExxonMobil should be granted protective order relief.

   **G.  Topics That Seek "Discovery on Discovery" are Impermissible.**  Rahman's Deposition Topics (10) and (11) and Document Requests (1)-(4) are objectionable, as they impermissibly seek "discovery on discovery" without making the requisite showing to the Court. ExxonMobil should be protected from being forced to produce a corporate witness on these topics and from being forced to produce documents in response to these requests.[33]

   Rule 26(b)(1) limits discovery to information "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  In recognizing this limit, courts have grown increasingly skeptical that efforts to discover information concerning another party's compliance with discovery requests,

---

[32] *See also*, *Coleman v. Anco Insulations, Inc.,* 2017 WL 1854988, *2 (M.D. La.).

[33] *See*, Exhibit B to ExxonMobil's Motion which includes the detailed objections to each individual topic/document request.

to the extent such information is not protected by an applicable privilege, satisfy Rule 26(b)(1)'s relevancy requirement.[34]   Another court has noted, "requests for such 'meta-discovery' should be closely scrutinized in light of the danger of extending the already costly and timeconsuming [sic] process *ad infinitum*."[35]   Such close scrutiny requires a showing of exceptional deficiencies in a party's discovery compliance to warrant the kind of "meta-discovery" sought here.   However, Rahman cannot make a showing of any such deficiencies that would warrant the discovery sought in the topics and discovery requests identified above.   Thus, ExxonMobil should be granted protective order relief.

**H.   Topics Seeking Information Protected by the Attorney-Client and Other Privileges Are Impermissible.**   On its face, Rule 26 limits discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1)(emphasis added); *see also Crosswhite v. Lexington Ins. Co.*, 321 Fed.App'x 365, 368 ("The grounds for a protective order can include privileged or work-product material.").   Notwithstanding this clear mandate, Rahman has noticed topics which invade areas covered by ExxonMobil's attorney-client and other privileges.   The Court should protect ExxonMobil's privileged information from impermissible disclosure and prevent them from being forced to produce a corporate witness as to the topics identified in Exhibit B as privileged. ExxonMobil should be granted protective order relief.

**I.   Document Requests are Untimely.**   Federal Rule of Civil Procedure 34 provides parties 30 days to respond in writing after being served with discovery requests.   Further, Local Rule 26(d)(2) provides that "[w]ritten discovery is not timely unless the response to that

---

[34] *See, e.g., E.E.O.C. v. Boeing Co.*, 2007 WL 1146446 (D. Ariz.) (denying motion to compel testimony on Rule 30(b)(6) topics relating to defendant's document collection and production process as such topics were not relevant to any claim or defense and therefore were outside the scope of Rule 26(b)(1) discovery).
[35] *Freedman v. Weatherford Inter. Ltd.*, 2014 WL 4547039, *2 (S.D.N.Y.).

discovery would be due before the discovery deadline.  The responding party has no obligation to respond and object to written discovery if the response and objection would not be due until after the discovery deadline."  Although Rahman provided ExxonMobil with a draft of the Notice on July 3, 2019, Rahman's completed, signed Notice was served on ExxonMobil on July 26, 2019, which was less than 30 days before the discovery deadline set out in this Court's Scheduling Order (August 20, 2019).[36]  Accordingly, Rahman's document requests found in his Notice were untimely.

**III.    <u>Conclusion</u>**

For the reasons above and those stated in Exhibit B to ExxonMobil's Motion (*i.e.*, ExxonMobil's objections to Plaintiff's Notice), ExxonMobil is entitled to a protective order from Rahman's Notice of FRCP 30(b)(6) Deposition and to have the deposition notice and document requests quashed.

Respectfully submitted:

  */s/ Scott D. Huffstetler*
Scott D. Huffstetler (#28615), T.A.
scott.huffstetler@keanmiller.com
Theresa R. Hagen (#19333)
theresa.hagen@keanmiller.com
Chelsea Gomez Caswell (#35147)
chelsea.caswell@keanmiller.com
**KEAN MILLER LLP**

---

[36] *See*, Scheduling Order [Doc. 12].

400 Convention Street, Suite 700
P. O. Box 3513 (70821-3513)
Baton Rouge, LA  70802
Telephone:  (225) 387-0999
Facsimile:  (225) 388-9133

***Attorneys for Exxon Mobil Corporation***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to the following, by operation of the Court's electronic filing system:

Stephen C. Carleton
scarleton@lawfirmbr.com
Carmen T. Hebert
chebert@lawfirmbr.com
Carleton Hebert Wittenbrink & Shoenfelt, LLC
445 North Boulevard, Suite 625
Baton Rouge, Louisiana  70802

Baton Rouge, Louisiana this 16th day of August, 2019.


_____/s/  Scott D. Huffstetler_____
Scott D. Huffstetler