# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**OMAR A. RAHMAN**                                      **CIVIL ACTION**

**VERSUS**
                                                       **NO. 18-894-BAJ-RLB**
**EXXONMOBIL CORPORATION**

## ORDER

Before the Court is Plaintiff's Motion to Compel ("First Motion to Compel"). (R. Doc. 20). The motion is opposed. (R. Doc. 32).

Also before the Court is Defendant's Motion for Protective Order and Motion to Quash Rule 30(b)(6) Deposition Notice ("Motion for Protective Order"). (R. Doc. 23). The motion is opposed. (R. Doc. 33). Defendant has filed a Reply. (R. Doc. 38). Plaintiff has filed a Surreply. (R. Doc. 43).

Also before the Court is Plaintiff's Second Motion to Compel. (R. Doc. 29). The motion is opposed. (R. Doc. 39).

The Court considers the foregoing discovery motions together as they all concern related issues.

## I.     Background

On October 9, 2018, Omar A. Rahman ("Plaintiff") commenced this employment discrimination action naming his former employer Exxon Mobil Corporation ("Defendant" or "Exxon") as the sole defendant. (R. Doc. 1, "Compl."). Plaintiff alleges that he "began employment with Defendant on or about February 13, 2017 as a Process Technician at Defendant's Baton Rouge Polyolefins Plant ('BRPO') and was terminated by Defendant on the basis of his race [black] on or about July 31, 2017." (Compl. ¶¶ 5-6). Plaintiff alleges that he

"was singled out and intentionally discriminated against by Defendant in his training, his work environment and in his termination from employment because of Plaintiff's race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.*, 42 U.S.C. § 1981 and 42 U.S.C. § 1981a." (Compl. ¶ 19).

There appears to be no dispute that approximately six weeks after his hire date, Plaintiff began basic operating training at Exxon's training facility along with nine other trainees. Plaintiff passed the required written test and was then assigned to field training in the BRPO Polypropylene Unit ("Poly Unit" or "PP Unit") in April of 2017. Plaintiff does not allege any discrimination prior to his assignment to field training. There also appears to be no dispute that Ray Crawford, who is white, was Plaintiff's assigned trainer. Plaintiff alleges that he received inadequate training from Mr. Crawford despite repeated complaints about the inadequate field training to Mr. Crawford's supervisors, including Second Line Supervisor Michael Bough and Area Superintendent Roger Dyer, who are both white. (Compl. ¶¶ 10-12).

Plaintiff alleges that while he was in field training, the entire field of supervisors for the BRPO Poly Unit were white, and black employees were excluded from "permanent assignment to an outdoor technical field position in this department on any of the work shifts" as a result of the "intentional design and actions" of employees at the BRPO Poly Unit (Compl. ¶ 13). Plaintiff alleges that he "was intentionally subjected to inadequate training in the field" and that he failed the field training because of his race, not the pretextual reason provided by Defendant "that he lacked the knowledge necessary for employment as to the equipment, processes and procedures of the job." (Compl. ¶¶ 15-16). There appears to be no dispute that James LeBlanc was the only other trainee who trained with the BRPO Poly Unit at the same time as Plaintiff, and that Mr. LeBlanc, unlike Plaintiff, passed the field training and was offered permanent

employment. Plaintiff alleges that Mr. Leblanc passed the training and was provided permanent employment because he is white. (Compl. ¶¶ 17-18).

On May 29, 2019, the Court entered an Agreed Protective Order governing the exchange of confidential information in this action. (R. Doc. 14). The Court set the deadline for the parties to complete non-expert discovery, including the filing of related motions, on August 20, 2019. (R. Doc. 12).

On March 15, 2019, Plaintiff served his First Set of Requests for Production and First Set of Interrogatories on Defendant. (R. Doc. 20-2). Exxon provided responses on May 29, 2019. (R. Doc. 20-3). There is no dispute with respect to the timeliness of these responses. On June 19, 2019, the parties held a discovery conference at which defense counsel narrowed the date range of requested information to January 1, 2010 to the present. (R. Doc. 20-1 at 2-3). Plaintiff's First Motion to Compel seeks to obtain supplemental responses with respect to Interrogatory Nos. 2, 3, 4, 5, 6, 10, 11, 13, 17, and 18, and Requests for Production Nos. 2, 3, 7, 11, 12, 13, 15, 16, 17, 20, 21, 22, 24, and 25. (R. Doc. 20). Plaintiff asserts that Exxon has improperly withheld documents on the basis of the attorney-client privilege, and, among other things, failed to produce statistical information evidencing Exxon's historic discrimination against black employees.

On July 3, 2019, Plaintiff's counsel provided defense counsel with an unsigned and undated copy of a Rule 30(b)(6) deposition notice. (R. Doc. 23 at 2). Plaintiff served an actual copy of the deposition notice (and accompanying requests for production) on July 26, 2019. (R. Doc. 23-2). The deposition notice lists eleven topics and contains eleven document requests (the responses to which Plaintiff also designated as a twelfth deposition topic). The notice set Exxon's Rule 30(b)(6) deposition on August 20, 2019 at defense counsel's office in Baton

Rouge, Louisiana. (R. Doc. 23-2 at 1). Exxon objected to the noticed location of deposition, objected to the scope of the deposition topics and document requests, and objected to the document requests as untimely. (R. Doc. 23-3). Exxon's Motion for Protective Order seeks an order quashing the deposition notice and finding the document requests untimely. (R. Doc. 23).

On July 19, 2019, Plaintiff served his Second Set of Interrogatories, Requests for Production, and Requests for Admission on Defendant. (R. Doc. 29-2 at 1-6). Exxon responded on the day before the close of non-expert discovery, August 19, 2019, and produced certain redacted spreadsheets. (R. Doc. 29-2 at 7-24). After the parties held a discovery conference, Plaintiff filed his Second Motion to Compel on August 29, 2018, nine days after the close of discovery, seeking an order requiring supplemental responses to Interrogatory No. 21 and 22, and Request for Production Nos. 27, 28, and 29. (R. Doc. 29-1).

## II.     Law and Analysis

### A.     Legal Standards for Discovery

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking

discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

"When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).  Blanket assertions of a privilege are unacceptable, and the court and other parties must be able to test the merits of a privilege claim. *United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982) (citing *United States v. Davis,* 636 F.2d 1028, 1044 n. 20 (5th Cir. 1981)).

Rule 33 of the Federal Rules of Civil Procedure provides for the service of written interrogatories.  A party seeking discovery under Rule 33 may serve interrogatories on any other party and the interrogatory "may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2).

Rule 34 of the Federal Rules of Civil Procedure provides for the discovery of documents and tangible items. A party seeking discovery must serve a request for production on the party believed to be in possession, custody, or control of the documents or other evidence. Fed. R. Civ. P. 34(a). The request is to be in writing and must set forth, among other things, the desired items with "reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A).

A party must respond or object to interrogatories and requests for production. *See* Fed. R. Civ. P. 33(b)(2); Fed. R. Civ. P. 34(b)(2)(A). This default date may be modified by stipulation between the parties. Fed. R. Civ. P. 29(b). If a party fails to respond fully to discovery requests in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel responses and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

Rule 30(b)(6) governs deposition notices directed to organizations. In the deposition notice, the party "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). In response, the organization must designate an agent or other person to testify on its behalf "about information known or reasonably available to the organization." *Id*. "The duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006). The court may limit a Rule 30(b)(6) deposition notice to the extent it requests the organization to designate an agent to testify on topics of information that are overly broad, vague, or ambiguous. *See*, *e.g.*, *Scioneaux v. Elevating Boats, LLC*, No. 10-0133, 2010

WL 4366417, at *3 (E.D. La. Oct. 20, 2010) (quashing deposition notice where the plaintiff failed to particularize the topics of discussion in Rule 30(b)(6) deposition notice); *In re Katrina Canal Breaches Consolidates Litigation*, No. 05-4182, 2008 WL 4833023 (E.D. La. July 2, 2008) (granting motion for protective order to the extent topics listed in a 30(b)(6) notice were overly broad, vague and ambiguous); *Padana Assicurazioni–Societa Azioni v. M/V Caribbean Exp.*, No. 97-3855, 1999 WL 30966 (E.D. La. Jan. 21, 1999) (denying motion to compel Rule 30(b)(6) deposition where the notice was insufficiently particularized).

### B.    General Scope of Discovery

Plaintiff seeks a wide-range of information pertaining to employment at Exxon spanning several years prior to Plaintiff's employment.  While some of the information sought by Plaintiff is narrowly tailored with respect to the dates of Plaintiff's employment and the department in which he worked, some discovery requests are facially overly broad because they seek decades of information pertaining to Exxon as a whole.  Having considered the pleadings in this action and the arguments of the parties, the Court will generally limit the scope of discovery in this action as set forth below.  The Court will then address the specific discovery requests and deposition topics to the extent necessary.

Much of Plaintiff's discovery is directed at statistical evidence with respect to Exxon's employees and Exxon's treatment of those employees based on race.  Statistical evidence may be relevant in individual disparate treatment actions. *Bauer v. Albemarle Corp.*, 169 F.3d 962, 968 (5th Cir. 1999) ("Statistical evidence can be utilized by an individual disparate treatment plaintiff to help rebut the employer's non-discriminatory explanation. However, more than statistics are usually necessary to rebut an employer's strong showing of a legitimate, non-discriminatory reason for discharging a particular employee. . . .") (citations omitted); *Baylie v. Fed. Reserve*

*Bank of Chicago*, 476 F.3d 522, 524 (7th Cir. 2007) (affirming summary judgment in favor of employer in de-certified class action where the remaining two plaintiffs relied heavily on an expert report based on statistical evidence, noting that statistical analysis has some "technical" relevance in an individual disparate-treatment claim).  The method of proving disparate treatment through statistical evidence, however, is generally the province of "pattern or practice" employment discrimination claims or class action disparate impact claims.  *See International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 339 (1977) (statistical evidence is competent to prove systemwide pattern or practice of employment discrimination); *Anderson v. Douglas & Lomason Co., Inc.*, 26 F.3d 1277, 1285 (5th Cir. 1994) (statistical evidence may establish prima facie case of disparate treatment in class action); *Bernard v. Gulf Oil Corp.*, 841 F.2d 547, 568 (5th Cir. 1988) (same); *see also Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 876 (1984) ("The crucial difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination is manifest. The inquiry regarding an individual's claim is the reason for a particular employment decision, while at the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decisionmaking.") (internal quotation marks and citations omitted).

In this action, however, the overly broad amount of statistical information sought by Plaintiff falls outside the scope of discovery as it is unlimited in subject matter and temporal scope.  The instant action concerns a single individual's allegations of race discrimination while employed by Exxon for less than six months.  Unlike the decisions relied upon by Plaintiff to obtain a wide-range of statistical employment information (*International Brotherhood*, *Anderson*, and *Bernard*), Plaintiff has not alleged "pattern or practice" claims or class-wide

allegations of disparate impact. Generally speaking, Plaintiff has failed to demonstrate that the full broad-range statistical evidence sought in this individual disparate treatment action falls within the scope of discovery. *See Marchese v. Secretary, Dep't of the Interior,* No. 03-3082, 2004 WL 2297465, at *1 (E.D. La. Oct. 12, 2004). Given the limited scope of Plaintiff's individual claims, the decades of employment information sought by Plaintiff amount to a "fishing expedition in the hope of finding similarly situated employees who were with discriminated against or were treated different." *See Scott v. E.I. DuPont de Nemours & Co.*, No. 14-391, 2015 WL 5472930, at *2 (M.D. La. Sept. 16, 2015).

The scope of discovery includes information pertaining to similarly situated employees to the extent that it is proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)(1). Courts have allowed discovery of other claims of discrimination against an employer where limited to the same form of discrimination, the same department or agency where the plaintiff worked, and a reasonable time before and after the discrimination occurred. *Minnis v. Bd. of Sup'rs of Louisiana State Univ. Agric. & Mech. Coll.*, No. 13-5, 2013 WL 6271940, at *8 (M.D. La. Dec. 4, 2013), *objections overruled*, 2014 WL 12811456 (M.D. La. Aug. 15, 2014). The relevant timeframe is case specific, but courts have generally limited discovery of other employee's claims of discrimination to 3 to 5 years. *Id.*

Given the foregoing, the Court will generally limit the scope of information discoverable from Exxon pertaining to other employees to information bearing upon discrimination based upon race at the BRPO or BRPO's Poly Unit within three years of Plaintiff's termination (i.e., July 31, 2014 to July 31, 2017). The Court will now turn to Plaintiff's specific discovery requests and deposition topics.

### C.      Plaintiff's Motion to Compel (R. Doc. 20)

Plaintiff's Motion to Compel seeks supplemental responses to Interrogatory Nos. 2, 3, 4, 5, 6, 10, 11, 13, 17, and 18, and Requests for Production Nos. 2, 3, 7, 11, 12, 13, 15, 16, 17, 20, 21, 22, 24, and 25. (R. Doc. 20).  Plaintiff represents that Exxon did not produce a privilege log with respect to documents withheld or redacted on the basis of privilege. (R. Doc. 20-1 at 4-5). In response to each of these discovery requests, Exxon objected based on overbreadth, undue burden, vagueness, ambiguity, irrelevance, and lack of proportionality.  As discussed above, the Court has generally limited the scope of available discovery in light of these objections.

Unless otherwise noted below, to the extent that Exxon maintains any privilege with respect to responsive documents that fall within the scope of discoverable information as defined by this Order, whether withheld in full or produced with redactions, it must produce a privilege log within **14 days** of the date of this Order.  Furthermore, to the extent Exxon has withheld any documents that are responsive to Plaintiff's requests for production, considering the scope of discovery as detailed in this Order, Exxon must, within **14 days** of the date of this Order, identify whether any documents have been withheld on the basis of its objections. *See* Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection.  An objection to part of a request must specify the part and permit inspection of the rest.").

Subject to the forgoing, the Court will address the specific interrogatory requests and responses at issue.

### Interrogatory Nos. 2-5

Interrogatory Nos. 2-5 collectively seek the identification of work positions and employees (including operators, applicants for the position of operator, and first and second level

management or supervisory level positions over operators) at the BRPO Poly Unit from 1990 to present. (R. Doc. 20-2 at 14-15). Subject to its objections, Exxon provided responsive information limited to the year 2017. (R. Doc. 20-3 at 39-42).

Exxon must provide the information sought for the period of July 31, 2014 to July 31, 2017 to the extent not previously provided. For each identified individual, Exxon must provide the requested names, last known address and phone number, and race. No other information sought by Plaintiff through its overly broad definition of "identify" must be provided.

**Request for Production Nos. 16-17**

Request for Production No. 16 seeks production of performance reviews or evaluations for applicants at the BRPO Poly Unit from 1990 to present, and Request for Production No. 17 seeks "all correspondence, memoranda, notes, or documents" related to the review of these candidates. (R. Doc. 20-2 at 8). Exxon did not produce any documents subject to its objections. (R. Doc. 20-3 at 25-26).

Exxon must provide performance reviews or evaluations for applicants at the BRPO Poly Unit for the period of July 31, 2014 to July 31, 2017. No further information must be produced.

**Interrogatory No. 6**

Interrogatory No. 6 seeks production of compensation and benefit information for any person holding the "the Polypropylene post" at the BRPO Poly Unit from 2017 to present. (R. Doc. 20-2 at 15). Subject to its objections, Exxon produced Plaintiff's compensation and benefit information (W2s, monthly payroll summary reports, and pay stubs) and the 2016 Collective Bargaining Act ("CBA") governing wages and benefits for represented employees during the pendency of the CBA term and the only CBA in place since 2017. (R. Doc. 20-3 at 44; *See* R. Doc. 32 at 9).

Exxon only produced specific compensation and benefit information pertaining to Plaintiff. The information sought pertaining to other similarly situated employees is relative to damages. The Court will require Exxon to produce the comparable W2s, monthly payroll summary reports, and pay stubs for any other individual holding the Polypropylene post at the BRPO Poly Unit in the years 2017-2018 (when the lawsuit was filed). Exxon may produce this information with the designation of "confidential" under the Agreed Protective Order.

**Interrogatory Nos. 10 and 13**

Interrogatory No. 10 seeks the identification of civil lawsuits against Exxon involving allegations of race discrimination since January 1, 2010. (R. Doc. 20-2 at 16). Interrogatory No. 13 seeks the identification of charges of discrimination filed against Exxon with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Louisiana Commission on Human Rights ("LCHR") since June 1, 2010. (R. Docs. 20-2 at 16-17).

In response to Interrogatory No. 10, Exxon stated that "no lawsuit alleging race discrimination at the BRPO Plant has been filed against [Exxon]" since January 1, 2010. (R. Doc. 20-3 at 46). In response to Interrogatory No. 13, Exxon stated that "since June 1, 2010, other than Plaintiff, no charges of discrimination alleging race discrimination at the BRPO Plant" have been filed with the EEOC or LCHR since June 1, 2010. (R. Doc. 20-3 at 47). These responses are sufficient, and no further response is required.

**Request for Production No. 15**

Request for Production No. 15 seeks production of documents since January 1, 1990 regarding any allegations of racial discrimination against African-Americans in employment, hiring, training, testing, or promotion at the BRPO plant. (R. Doc. 20-3 at 24). Exxon did not produce any documents subject to its objections. (R. Doc. 20-3 at 24-25).

Exxon must provide the information sought to the extent it pertains to any documented allegations of racial discrimination against black employees at the BRPO for the period of July 31, 2014 to July 31, 2017.

**Interrogatory No. 11**

Interrogatory No. 11 seeks the identity of individuals Exxon believes possess information regarding the allegations and circumstances in this lawsuit, including specific identifying information such as gender, race, date of birth, etc., as well as a statement of the relevant facts Exxon believes the individual possesses. (R. Doc. 20-2 at 16). Exxon referred Plaintiff to its initial disclosures. (R. Doc. 20-3 at 47).

Exxon's response is sufficient. Exxon need not provide a privilege log detailing its mental impressions with respect to what facts the individuals identified in Exxon's initial disclosures might know about the allegations and circumstances in this lawsuit. Plaintiff has not established the relevance of any additional identifying information for the individuals subject to this interrogatory.

**Interrogatory No. 17**

Interrogatory No. 17 asks Exxon to identify each test given to new employees for employment to the Polypropylene post and any persons terminated based on the results of the tests since January 1, 2010. (R. Doc. 20-2 at 18). Subject to its objections, Exxon stated that it was diligently searching for responsive information and would produce any such located information, subject to the Protective Order. (R. Doc. 20-3 at 52-53).

In response to Plaintiff's second set of discovery, Exxon identified five individuals who were hired at BRPO and initially trained for and qualified on the BRPO Poly Unit between 2012-2016, further providing that the individuals underwent a training and testing process similar to

the 2017 class and that none of the individuals were terminated based on failure to timely and completely complete the training and testing process. (R. Doc. 15-4 at 58-59).

Given the foregoing, Exxon has sufficiently answered this interrogatory. No further response must be provided.

**Interrogatory No. 18**

Interrogatory No. 18 asks Exxon to identify the employees who trained with Plaintiff at the BRPO in February-April of 2017 and to provide their test results, the areas of the facility to which they were assigned, subsequent additional training, their trainers, and whether they remain employed by Exxon. (R. Doc 20-2 at 8). Exxon identified the individuals who received basic operator training with plaintiff, their races, the units they were assigned to for initial field training, and the identity of their trainers. (R. Doc 20-3 at 53-54).

Exxon represents in its opposition that it "has provided the names, addresses for former employees, races, units to which they were initially assigned for initial field training, names of field training trainers, test scores during Basic Operator Training, qualification cards (which show performances during the final post qualification), and reasons for termination," and that testimony has revealed the genders and start date (February 2017) of the trainees. (R. Doc. 32 at 12).

Given the foregoing, Exxon has sufficiently answered this interrogatory. No further response must be provided.

**Request for Production No. 2**

Request for Production No. 2 seeks production of "all documents, ESI or other evidence which constitute or refer to Defendant's files regarding the termination of Plaintiff's employment

out of which this lawsuit arises." (R. Doc. 20-2 at 5). Subject to its objections, Exxon produced various documents. (R. Doc. 20-3 at 5-9).

The information sought falls within the scope of discovery. Plaintiff argues that Exxon improperly withheld information without producing a privilege log and otherwise must produce certain documents in the agreed-upon format. (R. Doc. 20-1 at 19-20). The Court agrees. As discussed above, Exxon must privilege a privilege log for any responsive information it has withheld, whether in whole or through redactions. Exxon represents it has produced the specifically referenced documents in the format sought. (R. Doc. 32 at 12). Accordingly, the issue of production format is moot.

**Request for Production No. 3**

Request for Production No. 3 seeks production of documents referring to Exxon's training of Plaintiff "other than the training materials for study themselves," including performance reviews, evaluations, tests, test scores, emails, memos, and qualification cards for ExxonMobil employees in Plaintiff's training class. (R. Doc. 20-2 at 5). Subject to its objections, Exxon produced test score results and qualifications cards for the trainees at issue. (R. Doc. 20-3 at 12-13).

The information produced with respect to these individuals is sufficient. Exxon must confirm, however, that it has produced all test score results and qualification cards for each of the trainees in Plaintiff's training class. Otherwise, Exxon must produce the information.

With respect to Mr. LeBlanc, Exxon must produce all of the information sought if not previously produced. Exxon may produce this information with the designation of "confidential" under the Agreed Protective Order.

## Request for Production No. 7

Request for Production No. 7 seeks production of communications between Exxon and its employees pertaining to "any allegation or complaints made by Plaintiff during the course of his employment" asserting that Exxon "treated him unfairly in regard to his employment or training, and any response or responsive action taken by [Exxon] related to Plaintiff's allegations or complaints." (R. Doc. 20-2 at 6). Subject to its objections, Exxon produced various documents. (R. Doc. 20-3 at 15-18).

The information sought falls within the scope of discovery. Exxon represents, however, that "there are no responsive documents to this request other than communications among ExxonMobil employees regarding Plaintiff's lawsuit and the preceding . . . EEOC charge." (R. Doc. 32 at 14). Plaintiff confirmed at his deposition that he never complained of discrimination during his employment. (*See* R. Doc. 32-11 at 13-14). Accordingly, the Court will not require Exxon to produce a privilege log with respect to communications after the commencement of this lawsuit and EEOC charge. Exxon need not respond further to this document request.

## Request for Production No. 11

Request for Production No. 11 seeks production of "all documents describing or referring to any affirmative action plan of the Defendant, in regard to hiring of African-American employees, relating to the ExxonMobil BRPO or the BRPO Polypropylene Unit." (R. Doc. 20-2 at 7). Subject to its objections, Exxon stated it would produce information if located. (R. Doc. 20-3 at 22).

Exxon represents that it "has already produced the BRPO workforce racial data and EEO-1 reports requested in Plaintiff's written discovery." (R. Doc. 32 at 14-15). Exxon argues that the production of the affirmative action plan is "unnecessary and duplicative" and that it should

not be ordered to produce an affirmative action plan "for an unspecified time period." (R. Doc. 32 at 15).

The Court will limit the document request to the affirmative action plan in effect at the time of Plaintiff's hiring with respect to the BRPO or BRPO Poly Unit. Exxon makes no specific arguments in support of a finding that production of the affirmative action plan would be unduly burdensome. Exxon may produce this document as "confidential" pursuant to the Agreed Protective Order.

**Request for Production Nos. 12 and 20**

Request for Production No. 12 seeks production of "each and every written policy or procedure in effect at the time of Plaintiff's termination concerning how and when Defendant's employees may be disciplined, demoted or terminated." (R. Doc. 20-2 at 7). Request for Production No. 20 seeks a copy of the "current ExxonMobil BRPO employee handbook, and any similar material specifically related to the BRPO Polypropylene Unit." (R. Doc. 20-2 at 8). In response to both requests for production, Exxon referenced its responses to Request for Production No. 5, in which it produced certain responsive policies and handbooks. (R. Doc. 20-3 at 14-15, 23, 27).

The information sought falls within the scope of discovery to the extent the document requests seek policies, procedures, and handbooks in effect at the BRPO and BRPO Poly Unit during Plaintiff's employment. Exxon represents that it "has provided all responsive policies and procedures for BRPO bargaining unit employees." (R. Doc. 32 at 15). Given the foregoing, Exxon need only confirm that it has no additional documents to produce that are responsive to the requests for production as limited by this Order.

**Request for Production No. 13**

Plaintiff's Request for Production No. 13 seeks production of any written communications between Plaintiff and his supervisors and managers while he was employed. (R. Doc. 20-2 at 7). This request is overly broad as stated, as it is not limited to the claims and defenses in this action. Exxon represents, however, that it "has not located many emails between Plaintiff and others during employment." (R. Doc. 32 at 15). To the extent that it is within the scope of discovery, the Court finds the instant request to be duplicative of Request for Production No. 7. Any communications between Plaintiff and his supervisors or managers regarding any allegations or complaints of unfair treatment or training, and any responses thereto, should be provided under that request. No additional production need be made to Request for Production No. 13.

**Request for Production No. 21**

Request for Production No. 21 seeks production of a copy of all compliance documents submitted by Exxon to the EEOC within the past ten years. (R. Doc. 20-2 at 8). Subject to objections, Exxon produced its 2015-2017 EEO-1 Reports for the BRPO. (R. Doc. 20-3 at 28).

The foregoing production is sufficient. No additional documents must be produced.

**Request for Production No. 22**

Request for Production No. 22 seeks production of a copy of any manual or handbook setting forth "the procedures to be followed in filling open positions" at the BRPO. (R. Doc. 20-2 at 9). Subject to its objections, Exxon stated that it was diligently searching for responsive documents. (R. Doc. 20-3 at 29).

Exxon represents that it has conducted diligent searches for responsive documents and has concluded there are none to produce. (R. Doc. 32 at 16). Exxon further represents that this

document request was not discussed in any of Plaintiff's communications prior to the filing of the motion to compel. (R. Doc. 32 at 16). Given the foregoing, the Court will not require Exxon to respond further to this document request.

**Request for Production No. 24-25**

Request for Production No. 24 and 25 collectively seek the production of "the current racial composition" of Exxon's workforce at the BRPO by position and of those holding the "Polypropylene post" by position. (R. Doc. 20-2 at 9). Subject to objections, Exxon produced a spreadsheet showing "the names, ethnicity [or race], and positions of all BRPO employees as of April 30, 2019." (R. Doc. 20-3 at 31-32). The names and personnel numbers were in fact redacted on the spreadsheet. (R. Doc. 21-1). Exxon has produced a subsequent spreadsheet, which also has redacted personnel numbers and names, that also provides the employees' "functional organization" and "organization unit name." (R. Doc. 21-2).

Plaintiff argues that the response is insufficient because Exxon has redacted the employee names, which prevents Plaintiff from comparing the information produced on two different spreadsheets by Exxon on two different dates. (R. Doc. 20-1 at 29-30). Exxon asserts that it should not be required to un-redact the names based on privacy concerns. (R Doc. 32 at 16-17). The Court finds that Exxon's concerns are alleviated by the Agreed Protective Order entered in this action. Furthermore, Exxon has already produced the names of various current and former employees, including listing them in its briefing. Given that Exxon has otherwise produced the sought information, it must re-produce the spreadsheets without redactions.

**D.      Defendant's Motion for Protective Order (R. Doc. 23)**

In seeking an order quashing the Rule 30(b)(6) deposition notice and related document requests, Exxon first argues that the subpoena should be quashed in its entirety because the

deposition was not noticed to take place at Exxon's principal place of business, and the entire deposition should be quashed on this basis. (R. Doc. 23-1 at 10-11). Exxon then argues that certain deposition topics and documents requests impermissibly seek discovery of statistical information and affirmative action plans, are impermissibly overbroad to the extent they seek information or documents "related to any facility outside of the BRPO," are cumulative and duplicative of prior depositions and written discovery, certain deposition topics impermissibly seek "discovery on discovery," and seek privileged information. (R. Doc. 23-1 at 11-18). Exxon also argues that document requests are untimely as they were served on July 26, 2019, less than 30 days before the close of discovery on August 20, 2019. (R. Doc. 23-1 at 18-19).

In opposition, Plaintiff first contends that the sought deposition testimony is not duplicative or cumulative of the individual testimony provided by Exxon's employees and that there is no suitable alternative to Exxon's deposition. (R. Doc. 33 at 3-5). Plaintiff further argues that Exxon's objections to the noticed location of the deposition is frivolous and Exxon's timeliness objections are not made in good faith. (R. Doc. 33 at 5-6). Plaintiff further argues that the topics in the deposition notice fall within the scope of discovery and its document requests are not unduly burdensome. (R. Doc. 33 at 7-9). Finally, Plaintiff argues that Exxon's privilege and confidentiality objections are not a basis to quash the subpoena. (R. Doc. 33 at 9-10).

As a preliminary issue, the Court finds that Plaintiff's document requests submitted with the deposition notice are untimely. The requests for production were not served until July 26, 2019 (R. Doc. 23-2), less than 30 days from the date to complete non-expert discovery on August 20, 2019. Rule 34(b)(2)(a) of the Federal Rules of Civil Procedure allows a party 30 days from service to respond to requests for the production of documents. This Court's local rules further provide that "[w]ritten discovery is not timely unless the response to that discovery

would be due before the discovery deadline" and "[t]he responding party has no obligation to respond and object to written discovery if the response and objection would not be due until after the discovery deadline." LR 26(d)(2). Accordingly, a request for discovery from a party "must be served at least thirty days prior to the completion of discovery" to be considered timely. *See Hall v. State of Louisiana*, No. 12-657, 2014 WL 2560715, at *1 (M.D. La. June 6, 2014) (citations omitted) (discovery requests served on party 14 days before discovery deadline were untimely as the party had 30 days to respond to such discovery requests). Based on the foregoing, Plaintiff's document requests provided with the notice of deposition were untimely served and Exxon need not respond to them.

The deposition of a corporation should ordinarily be taken at its principal place of business. *See Hennings v. CDI Corp.*, No. 08-271, 2009 WL 10678978, at *2 (M.D. La. Feb. 19, 2009). Here, Plaintiff noticed the deposition to occur at defense counsel's office in Baton Rouge. While it is unclear how this location would cause Exxon any undue hardship, Plaintiff has represented that his counsel will take the deposition at "any reasonable and suitable location in the Baton Rouge Area which Exxon designates." (R. Doc. 33 at 5-6). Accordingly, the Court will require the deposition to occur at Exxon's corporate office in Baton Rouge or any other agreed upon location in Baton Rouge.

The Court finds no basis for precluding Exxon's Rule 30(b)(6) deposition in light of the other individual depositions taken by Plaintiff. The deposition of a party opponent is within the scope of discovery. Unlike the depositions of individual Exxon employees, the Rule 30(b)(6) deposition testimony will bind the corporate deponent. Exxon's arguments with respect to previous depositions do not provide a basis for quashing the deposition in whole.

Finally, to the extent Exxon objects to the deposition on the basis that the topics seek attorney-client privileged or confidential information, its counsel may make appropriate objections pursuant to Rule 30(c)(2) or follow the procedures in the Agreed Protective Order for designating as "confidential" portions of depositions. Exxon's arguments based on privilege and confidentiality do not provide a basis for quashing the deposition in whole.

The Court will now address whether, and the extent to which, Exxon must submit itself to Topics 1-11 of the deposition notice. The Court will generally limit the deposition topics to be consistent with the limitations in this Order with respect to written discovery. The topics are limited as follows:

**Topic 1:**

The Court limits Topic 1 to policies and procedures in effect at the BRPO Poly Unit during Plaintiff's employment, including the information provided in response to Request for Production No. 12.

**Topic 2:**

The Court limits Topic 2 to guidelines and handbooks in effect at the BRPO Poly Unit during Plaintiff's employment, including the information provided in response to Request for Production No. 20.

**Topic 3:**

The Court limits Topic 3 to affirmative action plans in effect at the time of Plaintiff's hiring with respect to the BRPO or BRPO Poly Unit, including the information provided in response to Request for Production No. 11.

**Topic 4**:

The Court limits Topic 4 to policies and procedures regarding walk-throughs and evaluations of operators in effect at the BRPO Poly Unit during Plaintiff's employment.

**Topic 5**:

Exxon must provide testimony on Topic 5 without limitation. Exxon's investigation into Plaintiff's charge of discrimination is within the scope of discovery. Exxon may make any appropriate objection based on privilege at the deposition.

**Topic 6**:

The Court limits Topic 6 to policies, procedures, guidelines, and handbooks in effect at the BRPO Poly Unit during Plaintiff's employment, including the information provided in response to Request for Production Nos. 12 and 20.

**Topic 7**:

The Court limits Topic 7 to training and related materials regarding discrimination, harassment, or retaliation provided to employees, including supervisors and trainees, at the BRPO Poly Unit during Plaintiff's employment.

**Topic 8**:

The Court limits Topic 8 to the racial composition information provided by Exxon in response to Request for Production Nos. 24 and 25.

**Topic 9**:

The Court limits Topic 9 to civil lawsuits and charges of discrimination with the EEOC or LCHR alleging race discrimination at the BRPO since June 1, 2010, including information response to Interrogatory Nos. 10 and 13.

**Topics 10 and 11**:

Topics 10 and 11 are not described with reasonable particularity.  Exxon need not produce a corporate representative on these topics to the extent they seek information outside of the scope of Topics 1-9 as limited by this Order.

### E.      Plaintiff's Second Motion to Compel (R. Doc. 29)

Plaintiff filed his Second Motion to Compel on August 29, 2018, nine days after the close of discovery. (R. Doc. 29).  This motion is denied as untimely filed.  Pursuant to Local Rule 26(d)(1), "[a]bsent exceptional circumstances, no motions relating to discovery, including motions under Fed. R. Civ. P. 26(c), 29, and 37, shall be filed after the expiration of the discovery deadline, unless they are filed within seven days after the discovery deadline and pertain to conduct during the final seven days of discovery." LR 26(d)(1).  The deadline for filing all discovery motions and completing all discovery except experts expired on August 20, 2019. (R. Doc. 12).  To the extent the motion concerns conduct during the final seven days of discovery, it was likewise not filed within the 7-day period after the close of discovery as required by Local Rule 26(d)(1).

### III.     Conclusion

Based on the foregoing,

**IT IS ORDERED** that Plaintiff's Motion to Compel (R. Doc. 20) is **GRANTED IN PART and DENIED IN PART**.  Exxon shall supplement its discovery responses as provided in the body of this Order within **14 days** of the date of this Order, or as otherwise agreed upon by the parties.

**IT IS FURTHER ORDERED** that Defendant's Motion for Protective Order and Motion to Quash Rule 30(b)(6) Deposition Notice (R. Doc. 23) is **GRANTED IN PART and DENIED**

**IN PART.**  The topics covered in Exxon's Rule 30(b)(6) deposition shall be limited as provided in the body of this Order.  The Rule 30(b)(6) deposition shall take place within **30 days** of the date of this Order at Exxon's corporate office in Baton Rouge, or otherwise at a time and place agreed upon by the parties.

  **IT IS FURTHER ORDERED** that Plaintiff's Second Motion to Compel (R. Doc. 29) is **DENIED**.

  Signed in Baton Rouge, Louisiana, on January 21, 2020.

              **RICHARD L. BOURGEOIS, JR.**
              **UNITED STATES MAGISTRATE JUDGE**